IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ADVANCEME, INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:13-CV-02175-RWS |
| LE MAGNIFIQUE, LLC and : | |
| STEPHANIE C. LAURENT, : | |
| : | |
| Defendant. : | |

**ORDER**

This case comes before the Court on Plaintiff's Motion to Remand to State Court [8] and Defendants' Motion to Transfer the Case to the Southern District of New York [14]. After reviewing the record, the Court enters the following Order.

**Background**

This case arises out of a contract dispute between Defendant Le Magnifique, LLC, a New York company doing business in New York, and Plaintiff AdvanceMe, Inc., a Delaware corporation doing business in Georgia. The parties entered into a Future Receivables Purchase and Sale Agreement ("Agreement") whereby Plaintiff agreed to pay an up-front sum of money in

exchange for specified amounts of Defendant's future credit card receivables. (Compl., Dkt. [1-1] ¶ 7.) Le Magnifique's owner, Defendant Stephanie C. Laurent, executed the Agreement on behalf of the company as well as in his individual capacity to guarantee performance of certain obligations. (Id. ¶ 9.) The Agreement is governed by New York law, and it includes a forum selection clause whereby the parties agreed to submit to the jurisdiction "of any state or federal court sitting in New York City or Westchester County, New York or Cobb County, Georgia." (Dkt. [8-1] at 8.) The parties further waived "any objection that [they] may now or later have to the laying of venue of any suit, action, controversy, or proceeding . . . in any of the above-named courts." (Id.)

Pursuant to the Agreement, Plaintiff alleges that it paid Defendant $126,438.00 in exchange for the "sole right, title and interest in and to the Specified Amount of [$160,576.26] of Le Magnifique's future Card receivables." (Id. ¶ 11.) Defendant was then obligated to process credit card transactions with a particular card processor approved by Plaintiff. (Id. ¶ 12.) This processor would then remit a certain percentage of each transaction directly to Plaintiff until it received the total specified amount in the Agreement. (Id.) Plaintiff alleges that Defendant further agreed to use that

2

chosen processor exclusively, but by March 28, 2013, Defendant stopped using the processor and began running credit card transactions through a different machine in violation of the Agreement. (Id. ¶ 16.)

On May 20, 2013, Plaintiff brought this action in the State Court of Cobb County alleging breach of contract, breach of Laurent's personal guarantee, and conversion. (Id. ¶¶ 22-39.) Defendants then removed the action to this Court on June 28, 2013, on the basis of diversity jurisdiction. (Notice of Removal, Dkt. [1].) Citing the venue waiver in the forum selection clause, Plaintiff filed a Motion to Remand to State Court [8] on July 29, 2013. In response, Defendants filed a Motion to Transfer the Case to the Southern District of New York [14].

## Discussion

First, the Court addresses Plaintiff's Motion to Remand [8]. The parties do not contest the Court's subject matter jurisdiction, and the Court finds that it has jurisdiction under 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000. The only issue for the Court is whether Defendants waived their right to remove to federal court by the terms of the forum selection clause in the Agreement.

3

**I.    Legal Standard**

According to Defendants, the Court must interpret the forum selection clause under New York law pursuant to the New York choice of law provision. (Defs.' Br., Dkt. [14-2] at 14-15.)  Responding to Defendants' choice of law argument, Plaintiff argues that despite the presence of a choice of law clause in a contract, Georgia courts apply Georgia law to procedural matters.  See, e.g., Brinson v. Martin, 469 S.E.2d 537, 538 (Ga. Ct. App. 1996).  In reality, the briefing suggests that the dispute is actually over whether the Second Circuit's more stringent "clear and unequivocal" legal standard for waiver of removal applies, or whether this Circuit's "general contract principles" standard does. (Defs.' Br., Dkt. [14-2] at 12.)  Indeed, Defendants cite only federal cases from the Second Circuit that apply federal law.  Nevertheless, the parties have raised the issue of whether the choice of law clause here governs the interpretation of the forum selection clause.

In the context of a motion to transfer under 28 U.S.C. § 1404(a), it is well settled that federal law determines the enforceability of a forum selection clause.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988).  And in other contexts, such as here, the Eleventh Circuit has stated without analysis that "the

4

AO 72A
(Rev.8/82)

construction of forum selection clauses by federal courts is a matter of federal common law, not state law of the state in which the federal court sits." Cornett v. Carrithers, 465 F. App'x 841, 842 (11th Cir. 2012) (citing P & S Bus. Machs., Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003)) (applying federal law to a forum selection clause in the context of a motion to remand). But the Court has not found any Eleventh Circuit authority expressly discussing the present issue: whether the Court applies federal common law or state law when interpreting a waiver of removal contained in a forum selection clause.

The Court thus turns to the Erie doctrine, which guides courts in "decid[ing] whether state versus federal law governs a particular issue . . . in federal diversity cases." Rucker v. Oasis Legal Finance, LLC, 632 F.3d 1231, 1235 (11th Cir. 2011). Under the Erie doctrine, "federal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996). As the Eleventh Circuit has instructed, "The first step of the analysis is to determine whether state and federal law conflict with respect to the disputed issue before the district court. If no conflict exists, then the analysis need proceed no further, for the court can

5

apply state and federal law harmoniously to the issue at hand." Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1306-07 (11th Cir. 2002).

The parties have pointed to no New York or Georgia cases showing how the courts of those states would construe the disputed clause.  If the Court applies federal law, however, Defendants argue that a waiver of removal must be "clear and unequivocal," as courts in the Second Circuit hold.  See, e.g., JP Morgan Chase Bank, N.A. v. Reijtenbagh, 611 F. Supp. 2d 389, 390 (S.D.N.Y. 2009).  But the Agreement explicitly provides that the contract shall be interpreted "in accordance with the laws of the *State* of New York."  (Dkt. [8-2] at 8 (emphasis added).)  Besides not explaining how New York state courts would interpret the clause, Defendants do not explain why electing the laws of the State of New York requires the application of Second Circuit law.

The Eleventh Circuit, on the other hand, has expressly rejected the clear and unequivocal standard, instead holding that "in the context of removal based solely on diversity jurisdiction, ordinary contract principles govern a contractual waiver [of removal]."  Snapper, Inc. v. Redan, 171 F.3d 1249, 1261 (11th Cir. 1999) (footnote omitted).  Because the parties have not cited, and the Court is unable to find, any state court cases interpreting a clause waiving the

6

right to remove, the Court assumes that any difference between federal and state law construction of forum selection clauses is immaterial.  The Court thus applies ordinary contract principles to determine if Defendants waived removal.  See, e.g., Rucker, 632 F.3d at 1236-37 (citing federal law to assess the validity of a forum selection clause when there was no conflict between Alabama and federal law); Snapper, 171 F.3d at 1262 n.24 (declining to address which law to apply in interpreting a forum selection clause when the result was the same under either Georgia or federal law); Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 386 n.1 (1st Cir. 2001) (declining to reach the Erie issue because there was no conflict between federal common law and Puerto Rican law); Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d 318, 320-21 (10th Cir. 1997) (finding it unnecessary to decide which laws controlled the validity and interpretation of a forum selection clause when there were "no material discrepancies" between Colorado state law or federal common law).

## II. Analysis

Turning to the underlying issue, the language of the forum-selection clause reads in full:

7

>Section 4.6.  Governing Law; Jurisdiction
>
>. . .
>
>Seller and Principal(s) further irrevocably and unconditionally consent and submit to the jurisdiction of any state or federal court sitting in New York City or Westchester County, New York or Cobb County, Georgia to resolve any suit, action, controversy or proceeding of any kind . . . between or among the Parties . . . . Seller and Principal(s) waive, to the fullest extent permitted by law, (i) any objection that Seller or Principal(s) may now or later have to the laying of venue of any suit, action, controversy, or proceeding . . . in any of the above-named courts . . . .

(Agreement, Dkt. [8-2] at 8.)

Plaintiff argues that under this language, Defendants cannot remove to federal court after Plaintiff chose to sue in the State Court of Cobb County. Plaintiff also states that because there is no federal court "sitting in" Cobb County, removal to the Northern District of Georgia was improper.  Defendants, however, assert that they did not clearly and unequivocally waive the right of removal by consenting to personal jurisdiction and venue in the identified courts.  Moreover, Defendants contend that removal to this Court was proper because the Northern District of Georgia includes Cobb County.

Several Eleventh Circuit cases guide the Court's interpretation.  In Snapper, Inc. v. Redan, the forum-selection clause at issue stated:

8

> The Undersigned agrees that any legal action or proceeding with respect to this instrument may be brought in the courts of the State of Georgia or the United States District Court, Northern District of Georgia, Atlanta Division, all as Creditor may elect. By execution of this instrument, *the Undersigned hereby submits to each jurisdiction, hereby expressly waiving whatever rights may correspond to it by reason of its present or future domicile*. Nothing herein shall affect the right of Creditor to commence legal proceedings . . . in any other jurisdiction . . . .

171 F.3d at 1260 (emphasis added). The Eleventh Circuit held that Snapper was permitted to choose its forum, including any court of competent jurisdiction outside of Georgia. Id. As for the defendants, however, the clause "requires an absolute submission by [the defendants] to the jurisdiction of whichever of these fora [identified in the clause] that Snapper chooses." Id. at 1262 n.24. Even though the clause did not explicitly mention removal, the court interpreted the waiver of "whatever rights" as encompassing removal. Id. at 1262.

Similarly, in Russell Corp. v. American Home Assurance Co., the Eleventh Circuit found that the defendant insurer, by agreeing to a service-of-suit clause, "had agreed to go to, and stay in, the forum chosen by [the plaintiff]." 264 F.3d at 1046 (internal quotation marks omitted). In that case, the clause read:

9

> It is agreed that in the event of the failure of this COMPANY to pay any amount claimed to be due hereunder, this COMPANY, at the request of the INSURED, *will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction* and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

Id. at 1044 (emphasis added). The court went on to state that permitting removal from whichever forum the plaintiff chose "would defy the express language of [the defendant's] contract." Id. at 1047. Thus, much like in Snapper, the court reasoned that the broad removal language—to "comply with all requirements necessary to give such Court jurisdiction"—amounted to a waiver of removal. Russell, 264 F.3d at 1047.

In another Eleventh Circuit case, Global Satellite Communication Co. v. Starmill U.K. Ltd., the court discussed a narrower provision:

> Venue shall be in Broward County, Florida. . . . The parties to this agreement herein *expressly waive the right to contest any issues regarding venue or in personam jurisdiction* and agree in the event of litigation to submit to the jurisdiction of Broward County, Florida.

378 F.3d 1269, 1271 (11th Cir. 2004) (emphasis added). The court held that the defendant had not waived removal because the provision was "clearly limited to issues regarding venue or in personam jurisdiction." Id. The court

10

distinguished the result in Snapper where the term *whatever rights* was broad enough to include removal.  Id. at 1273.  Another key difference from the above cases—and this case—was that in Global Satellite, the contract designated venue in Broward County without specifying a particular forum such that "a suit either in the Seventeenth Judicial District of Florida, or in the Fort Lauderdale Division of the Southern District of Florida, both of which are located in Broward County, would satisfy the venue requirement."  Id. at 1272.  In other words, the term *Broward County* was ambiguous "because it name[d] only a geographical unit, host to several forums," without specifying any particular courts in that county.  Id. at 1273-74.

Applying ordinary contract principles to the clause in the instant action, the Court concludes that Defendants waived their right to remove from the State Court of Cobb County.  Here, the Agreement specifically stipulates that the parties submit to the jurisdiction of either the state or federal courts sitting in New York City, Westchester County, or Cobb County, and further states that parties waive any objection to the laying of venue "in any of *the above-named courts*."  This waiver is narrower than the broad language of the waivers in Snapper and Russell, which encompassed removal by their terms, but the clause

11

is precise in which courts the parties waive objections to venue. The waiver is not purely geographical; it is a waiver of venue in particular courts—state or federal—sitting in the specified locales. Thus, unlike in Global Satellite, the clause is not ambiguous because the Court need not "guess which of these it intended to designate." 378 F.3d at 1274. By waiving objection to the laying of venue in the State Court of Cobb County, among other courts, Defendants waived their right to remove. See Waters v. Browning-Ferries Indus., Inc., 252 F.3d 796, 797-98 (5th Cir. 2001) (holding that the parties waived removal by waiving "any objection . . . to the laying of venue . . . in any of such courts" named in the forum-selection clause). Consequently, Plaintiff's Motion to Remand [8] is **GRANTED**, and Defendants' Motion to Transfer [14] is **DENIED as moot**.

## Conclusion

In accordance with the foregoing, Plaintiff's Motion to Remand to State Court [8] is **GRANTED**, and Defendants' Motion to Transfer the Case to the Southern District of New York [14] is **DENIED as moot**. The Clerk is **DIRECTED** to remand the case to the State Court of Cobb County, Georgia.

**SO ORDERED**, this  8th  day of January, 2014.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

13